

2014 JUN -2 AM 8: 40

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Detention of ) NO. 69844-3-I
)
) DIVISION ONE
)
MICHAEL BARGAS )
) UNPUBLISHED OPINION
)
) FILED: June 2, 2014
_____ )

LAU, J. — Following a bench trial, the superior court found that Michael Bargas has a personality disorder and mental abnormalities that make him likely to engage in sexual violence and that require his commitment as a sexually violent predator. Because the court's findings are supported by substantial evidence, the findings support the court's conclusions of law, and Bargas's claim regarding the conditions of his confinement is not properly before us, we affirm.

## FACTS

In 1987, a jury convicted Bargas of forcibly raping a 38-year-old female acquaintance during a burglary. In 1990, four months after his release on the prior offense, the State charged Bargas with second degree rape. He pleaded guilty to an amended charge of third degree assault with sexual motivation. In 1997, Bargas

pleaded guilty to first degree child molestation involving a nine-year old girl. In 2011, the State of Washington filed a petition alleging that Bargas is a sexually violent predator (SVP).

At trial, the State's principal witness was Dr. Henry Richards, a psychologist with extensive experience in the evaluation, diagnosis, and treatment of sex offenders. He reviewed several thousand pages of records, including police reports, legal documents, health information, previous psychological evaluations, and records from the Department of Corrections. He also interviewed Bargas.

Dr. Richards concluded that Bargas suffers from antisocial personality disorder (ASPD), alcohol abuse, polysubstance dependence, severe psychopathy, and deviant sexual arousal. In his opinion, Bargas's personality disorder constitutes both a mental abnormality and a personality disorder under RCW 71.09.020(18).[1] His alcohol abuse and polysubstance dependence also constitute a mental abnormality. Dr. Richards testified that these disorders cause Bargas serious difficulty in controlling his sexually violent behavior.

To evaluate the relationship between Bargas's disorders and his lack of control, Dr. Richards looked at the disorders in the context of Bargas's life and offending behaviors. He testified that "the most basic contextual problem is [Bargas's] personality disorder, Antisocial Personality Disorder with severe psychopathy" and that these

_____

[1] RCW 71.09.020(18) provides: "Sexually violent predator" means any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility.

conditions drive his sexual opportunism. 3 Verbatim Report of Proceedings (Dec. 11, 2012) (3 VRP) at 142-43. Dr. Richards testified that Bargas is a type of rapist who is motivated by antisociality. "[A]nti-sociality is enough, just enough without substance abuse, to motivate [his] rapist type." 3 VRP at 151.

The psychopathy component of Bargas's antisocial personality disorder also plays a significant role in his lack of control. Dr. Richards testified that psychopathy indicates biological and neurological differences that have "a social psychological expression." 3 VRP at 96. Psychopathy is a significant predictor of reoffense when, as in Bargas's case, it is found in combination with deviant sexual arousal. According to Dr. Richards, some studies show a six-fold increase for reoffense when a person has both deviant sexual arousal and high psychopathy.

Dr. Richards concluded that Bargas's disorders and/or abnormalities cause him serious difficulty controlling his behavior and that, more likely than not, he will reoffend in a sexually violent way if not confined. He based that conclusion in part on actuarial tools, clinical factors, dynamic risk factors and lifestyle and personality patterns.

Dr. Chris Fisher, an expert retained by Bargas, reviewed the discovery, depositions, and other records and interviewed Bargas. He agreed that Bargas suffers from antisocial personality disorder and polysubstance abuse. He disagreed, however, that Bargas's mental abnormalities render him unable to control his sexual impulses. He testified that antisocial personality disorder does not, by itself, cause sexual offending. Noting that all of Bargas's offenses involved the heavy use of alcohol and other drugs, he testified that Bargas's risk of reoffense would be "infinitesimal if he maintained a sober and healthy lifestyle going forward." 5 Verbatim Report of

Proceedings (Dec. 13, 2012) (5 VRP) at 10. But even if Bargas did not remain sober, Dr. Fisher believed his risk of reoffense would be less than fifty percent.

Several additional defense witnesses testified to Bargas's religious convictions, his good character, and the support they could provide him in the community.

The trial court found Dr. Richards more qualified and credible than Dr. Fisher and concluded that the State had carried its burden. The court found that Bargas "suffers from alcohol abuse . . . , poly-substance dependence, and anti-social personality disorder with an extreme level of psychopathy. [He also] has deviant sexual arousal." Finding of Fact (FF) 13. The combination of these conditions cause Bargas "serious difficulty controlling his sexually violent behavior." FF 15. Based on Dr. Richards' testimony, the court found that Bargas's "mental abnormality and/or personality disorder make him likely to engage in predatory acts of sexual violence if not confined in a secure facility." FF 20. The court concluded that the State proved these elements beyond a reasonable doubt and that Bargas is a sexually violent predator as defined in RCW 71.09.020(18). Bargas appeals.

## STANDARD OF REVIEW

We apply criminal standards of review to appeals from sexually violent predator proceedings. In re Det. of Thorell, 149 Wn.2d 724, 744, 72 P.3d 708 (2003). In an appeal following a bench trial, we review challenged findings of fact to ensure that they are supported by substantial evidence. State v. Madarash, 116 Wn. App. 500, 509, 66 P.3d 682 (2003). "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding." Madarash, 116 Wn. App. at 509. We consider the evidence in the light most favorable to the State and treat

unchallenged findings of fact as verities. Madarash, 116 Wn. App. at 509. The weight, credibility, and persuasiveness of the evidence are matters for the trier of fact and will not be reviewed. State v. Walton, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992). We review challenged conclusions of law de novo, determining whether they are supported by the findings of fact. Madarash, 116 Wn. App. at 509.

## DECISION

To commit a person as a sexually violent predator, the State must prove beyond a reasonable doubt that the person "has been convicted of or charged with a crime of sexual violence and . . . suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18).

Bargas contends "the State failed to present substantial evidence that [his] ASPD, substance abuse, and psychopathy renders him so unable to control his sexual impulses that he must be confined to a secure facility." Br. of Appellant at 7. According to Bargas, "it is clear from Dr. Richards' testimony that Mr. Bargas' history of sexual offending is the result of substance abuse and a criminal lifestyle, and not the result of a mental condition that causes an ongoing and serious inability to control his sexual behaviors." Br. of Appellant at 10. He notes that Dr. Richards testified during his deposition "that all of [Bargas's] sex offenses were related to his substance abuse and that if he remained sober he would not be likely to reoffend." Br. of Appellant at 14. He claims this testimony shows that his "sexual offending is actually the result of substance abuse and a criminal lifestyle, not a mental condition" and that he does not lack

volitional control; rather, he is just "more likely to <u>choose</u> to commit sexual offenses

while intoxicated . . . ."[2] Br. of Appellant at 10, 13. We disagree for several reasons.

---

[2] The State correctly points out that Bargas's opening brief violates RAP 10.3(g) because it does not assign error to specific findings and conclusions. However, because it is not difficult to deduce which findings are challenged in the opening brief, we exercise our discretion to consider the merits of Bargas's arguments despite his noncompliance with the RAP. <u>State v. Olson</u>, 126 Wn.2d 315, 323, 893 P.2d 629 (1995) (appellate court has discretion to look past technical violations of RAPs). The following findings are expressly challenged by Bargas in his reply brief:

"13. Respondent suffers from alcohol abuse (possibly dependence), poly-substance dependence, and anti-social personality disorder with an extreme level of psychopathy. Respondent has deviant sexual arousal.

"14. Respondent's mental disorders are acquired or congenital conditions that affect Respondent's emotional and volitional capacity and predispose him to commit sexual acts to a degree constituting him a menace to the public health and safety.

"15. The combination of Respondent's alcohol abuse, poly-substance dependence, anti-social personality, severe psychopathy and deviant sexual arousal cause Respondent serious difficulty controlling his sexually violent behavior.

"16. The parties presented conflicting evidence about Respondent's risk of reoffending if released to the community. While Dr. Fisher attempted to reduce the concept of likelihood of reoffending to a purely mathematical formula, Dr. Richards recognized the need to consider many factors in assessing Respondent's risk of reoffending, including dynamic risk factors, clinical risk factors, actuarial risk and lifestyle factors, in reaching his opinion.

"17. Both Dr. Richards and Dr. Fisher scored Respondent on the Static 99R actuarial instrument. Dr. Richards' use and application of the Static 99R supports his opinion and this court's finding that Respondent is likely to re-offend if not confined to a secure facility.

"18. Both psychologists also scored Respondent on the Hare Psychopathy Checklist- Revised (PCL-R), but Dr. Richards' experience, training, and scoring of Respondent on this instrument is more reliable than Dr. Fisher's. Respondent's psychopathy, as shown by his high score on the PCL-R, and his history as a mixed rapist-child molester, supports Dr. Richards' opinion, and this court finding, that Respondent is likely to reoffend if not confined in a secure facility.

"19. Dr. Richards' risk assessment is more credible and it is based on dynamic risk factors, clinical risk factors, actuarial risk and lifestyle. Respondent is likely to commit future acts of sexual violence if not confined in a secure facility.

"20. Based on all the evidence presented, the Respondent's mental abnormality and/or personality disorder make him likely to engage in predatory acts of sexual violence if not confined in a secure facility."

Bargas also challenges conclusions of law 4, 5, 6, 7, and 8 in his reply brief. Those conclusions state in pertinent part that Bargas has a mental abnormality and

First, it is not necessary to prove that Bargas lacks all control over his actions in order to commit him as an SVP. It is sufficient to show that he has "serious difficulty" controlling his behavior. Thorell, 149 Wn.2d at 742; Kansas v. Crane, 534 U.S. 407, 413, 122 S. Ct. 867, 151 L. Ed. 2d 856 (2002).

Second, Dr. Richards did not testify that Bargas's acts are volitional or that he simply chooses when to offend. Rather, he testified that he diagnosed Bargas with a "mental abnormality," which by definition "impairs the person's ability to make a free choice . . . ." 3 VRP at 79-80. One of Bargas's mental abnormalities—antisocial personality disorder—manifests itself through impulsivity and reckless disregard for others. Although Dr. Richards believed that Bargas "doesn't want to hurt anybody," his "Antisocial Personality Disorder drives him toward certain opportunistic exploitative situations, environments." 3 VRP at 143 (emphasis added). A significant feature of Bargas's personality disorder—psychopathy—is characterized by "significant brain differences, psychophysiological reaction differences" that are "more defined as a biological neurological entity that has a social psychological expression." 3 VRP at 96. When asked if Bargas's personality disorder or mental abnormality cause him serious difficulty controlling his behavior, Dr. Richards said, "Yes." 3 VRP at 142.

Third, Bargas misrepresents the record. Dr. Richards did state in his deposition that if Bargas "were successfully to remain sober the rest of his life, perhaps there

---

personality disorder that cause him serious difficulty controlling his sexually violent behavior, that he is likely to engage in predatory acts of sexual violence if not confined, and that he is a sexually violent predator.

would be no new sexual offenses. I'd say more likely than not there would not be." But at trial, he explained that without the drug and alcohol problems, Bargas

> would be a different person. If he had a different history he would be a different person. I would have a different opinion.
>
> . . .
>
> If he were different it would be different. If you remove the drug and alcohol history and keep the offenses it might not change my opinion. In other words, the offenses are still there. <u>And if I still see the antisocial personality disorder and other deficits I would still be more likely than not</u>. But I'm assuming, you know, if everything was different, everything would be different. He wouldn't have these offenses and we wouldn't be sitting here.

4 RP (Dec. 12, 2014) at 116-17 (emphasis added). This testimony clarified Dr. Richards' earlier statements and, together with his other testimony,[3] supports the court's finding that Bargas's mental disorders make him likely to engage in predatory acts of sexual violence if not confined. Any conflict between Dr. Richards' deposition and trial testimony was a matter for the trier of fact. <u>Walton</u>, 64 Wn.App. at 415-16.

Fourth, even if Dr. Richards had testified that Bargas commits crimes primarily because of his substance abuse and dependence, he testified that Bargas's substance abuse and dependence are a mental abnormality warranting commitment under chapter 71.09 RCW. When coupled with an individual's history of sexually predatory acts, a mental abnormality supports a conclusion that the person has serious difficulty controlling his or her behavior. <u>Thorell</u>, 149 Wn.2d at 742.

---

[3] Dr. Richards also testified that "anti-sociality is enough, just enough without substance abuse, to motivate [Bargas's] rapist type," that Bargas's "most basic contextual problem is his personality disorder, Antisocial Personality Disorder with severe psychopathy," that these conditions drive his sexual opportunism, and that without them Dr. Richards would not expect to "be seeing multiple sexual offenses." 3 VRP at 151, 142-143.

Bargas next contends the State failed to prove that he currently suffers from conditions that make him likely to commit crimes of sexual violence. He claims that his plethysmograph test results, actuarial risk scores, and good behavior and sobriety in prison indicate that he is currently a low risk for reoffense. He concludes that even when viewed in the light most favorable to the State, the State's evidence was not sufficient to show that he currently suffers from conditions that render him likely to reoffend if not confined. Again, we disagree.

Both experts testified that the plethysmograph results were inconclusive and provided no useful information. Bargas's own expert, Dr. Fisher, testified that he is "not a big believer in PPGs to begin with," that "[t]hey don't really tell us anything," and that Bargas's inconclusive test didn't provide "anything meaningful." 5 VRP at 79.

Contrary to Bargas's assertions, the actuarial tests did not show that he is a low risk to reoffend. Bargas points out that "all three experts who administered the Static 99-R [test] scored Mr. Bargas as a four, which correlates to a group in which 17 to 23 percent of offenders are expected to recidivate within five years." Br. of Appellant at 20 (emphasis added). But Dr. Richards testified that Bargas's score resulted in a ten year recidivism risk of about 33 percent and that 33 percent is an underestimate because the Static 99R measures recidivism by new convictions, not by offenses that go unreported or undetected. Dr. Richards testified that his job is to assess the lifetime risk of an offense whether or not it is detected or charged. His testimony thus supported an inference that Bargas's risk of reoffense under the Static 99R test was not low, but rather exceeded 33 percent.

Furthermore, while Dr. Richards testified that the Static 99R result anchored his judgment, he considered other actuarial tools, clinical risk factors, dynamic risk factors, and lifestyle factors. At least one actuarial tool placed Bargas's risk of reoffense at over 80 percent. The Sex Offender Risk Appraisal Guide, which measures the risk of future violent offenses, indicated that Bargas was almost certain to engage in violent recidivism. And on the PCL-R, which measures psychopathy, Bargas's score was near the maximum and indicated severe psychopathy. While Dr. Richards said the PCL-R is "not very predictive" of reoffense among sex offenders in general, it is more predictive for rapists. Dr. Richards added that Bargas's history as a mixed rapist and child molester, as well as his combination of psychopathy and deviant sexual arousal, put him at greater risk for reoffense. With respect to Bargas's prison behavior and sobriety, Dr. Richards pointed out that this was in a controlled environment, there had been no intervening treatment other than Alcoholics Anonymous (AA), and Bargas had refused substance abuse treatment in a clinician-guided program called Clinically Assisted Self-Help (CASH).

Last, Bargas contends his commitment violates due process because "the intensive substance abuse treatment he requires is unavailable in [his] facility." Br. of Appellant at 23. This contention is not properly raised in an SVP commitment proceeding:

> The trier of fact's role in an SVP commitment proceeding . . . is to determine whether the defendant constitutes an SVP; it is not to evaluate the potential conditions of confinement. . . . The particular DSHS facility to which a defendant will be committed should have no bearing on whether that person falls within RCW 71.090.020(1)'s definition of an SVP. Furthermore, a person committed under RCW 71.09 may not challenge the actual conditions of their confinement, or the quality of the treatment at the DSHS facility until they have been found to

be an SVP and committed under the provisions of RCW 71.09. In re Detention of McClatchey, 133 Wn.2d 1, 5, 940 P.2d 646 (1997).

In re Det. of Turay, 139 Wn.2d 379, 404, 986 P.2d 790 (1999) (second emphasis added); see also In re Pers. Restraint of Duncan, 167 Wn.2d 398, 409-410, 219 P.3d 666 (2009). Thus, this issue was outside the scope of the proceedings below and is not properly before us on appeal.[4]

Affirmed.

WE CONCUR:

---

[4] We note that Bargas did not make a due process claim below and that he offers no basis for reviewing it for the first time on appeal. In any case, the argument is not persuasive. While Dr. Richards believed AA was not sufficient treatment given the severity of Bargas's substance abuse, he did not say that other available treatment, such as the CASH program that Bargas refused to participate in, was inadequate. Rather, he testified that substance abuse treatment is "a very large focus for offenders who have drug and alcohol problems" and that '[t]here are specified modules where they address sobriety and addiction . . . . and the basic principles of relapse prevention . . . ." 4 VRP at 48-49. Similarly, the trial court did not find that available substance abuse treatments were inadequate. The court simply found that the available treatment "does not focus on intensive substance abuse treatment, rather it is sex offender treatment that will address deviancy, sexual offending and substance abuse." The court did not assess the adequacy of the treatment.

-11-