IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32461-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FRANCISCO JAVIER SORIA-NANAMKIN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Francisco Soria-Nanamkin appeals his convictions for first degree burglary, unlawful imprisonment, theft of a motor vehicle, and second degree assault on several grounds. We affirm.

## FACTS

Mr. Soria-Nanamkin made several telephone calls in the early morning hours of September 6, 2012 to his former girlfriend, Tanya Abrego, asking her to pick him up. She initially declined, but agreed to pick him up when he threatened to come to her house while she and her son were trying to sleep. He was intoxicated when she picked him up and drove him to a convenience store. He bought a cigarette and left on foot in a state of anger. She drove home and returned to sleep.

Later that night Ms. Abrego was awakened by loud banging on her door. Unbeknownst to her, Mr. Soria-Nanamkin had broken down the back door and entered the house. She ran into her housemate's room and told him to phone the police. Mr. Soria-Nanamkin came up behind her and struck her in the back of the head, knocking her to the floor. He continued to hit and kick her. The housemate witnessed the assault but did not get involved.

Mr. Soria-Nanamkin then loaded her television and video game system into her car and ordered her to get in the car too. She obeyed out of fear and they drove to his girlfriend's house where he ordered her to throw rocks at his girlfriend's car until the neighbors chased them off. They drove back to Ms. Abrego's house where Mr. Soria-Nanamkin eventually drove off in Ms. Abrego's car, leaving her behind. Her car was later recovered by the police.

The next day, Ms. Abrego's lips and nose were swollen and bruised. Her right eye was swollen shut and bruised. She had rug burns on her knees and right elbow, and bruising to her upper-left hand side of her back, stomach, and left shoulder. While Ms. Abrego received treatment at Yakima Memorial Hospital, an officer from the Yakima Police Department came to interview her. During the interview, he dispatched officers to arrest Mr. Soria-Nanamkin. Mr. Soria-Nanamkin was brought to the police station and gave a recorded interview to Detective Chad Janis. In his statement, Mr. Soria-Nanamkin admitted to being in the house, but he denied assaulting Ms. Abrego.

2

The prosecutor filed charges of first degree burglary, second degree kidnapping, theft of a motor vehicle, and second degree assault. Each charge also was alleged to have been committed against a family or household member. The court conducted a CrR 3.5 hearing and admitted the statement at trial. The State also sought to admit evidence of previous incidents of violence by Mr. Soria-Nanamkin against Ms. Abrego. Although the defense contended that the evidence was extremely prejudicial, the court found that its probative value outweighed its prejudicial impact. The defense obtained a limiting instruction for the jury concerning the ER 404(b) evidence.

Mr. Soria-Nanamkin testified at trial in his own behalf. He denied unlawfully entering Ms. Abrego's house or forcing her to drive him to his girlfriend's house, but admitted assaulting her. The jury found Mr. Soria-Nanamkin guilty of the burglary, theft, and assault counts. It acquitted him of the kidnapping charge, but convicted him of the lesser included offense of unlawful imprisonment. The jury also did not find that any of the offenses were committed against a family or household member.

The trial court imposed concurrent standard range sentences. The court also directed that Mr. Soria-Nanamkin undergo a domestic violence perpetrator evaluation and treatment prior to the end of his period of community supervision. He then timely appealed to this court.

ANALYSIS

This appeal challenges the sufficiency of the evidence to support the unlawful imprisonment conviction, the decision to admit evidence pursuant to ER 404(b), the effectiveness of trial counsel's representation, and the imposition of the domestic violence perpetrator evaluation requirement. We address those challenges in the order stated.

*Unlawful Imprisonment*

Mr. Soria-Nanamkin argues first that the evidence did not establish the "restraint" element of the unlawful imprisonment charge. Properly viewed, the evidence did support the verdict.

Very familiar standards govern this challenge. Evidence is sufficient to support a verdict in a criminal case if, viewing the evidence in a light most favorable to the prosecution, a jury could find each element of the crime was proved beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-222, 616 P.2d 628 (1980). The crime of unlawful imprisonment is committed when the defendant knowingly restrains another person. RCW 9A.40.040. "Restrain," in turn, includes restricting "a person's movements without consent and without legal authority in a manner which interferes substantially with his or her liberty." RCW 9A.40.010(6). A "restraint" is "without consent" when it is accomplished by intimidation. *Id.*

4

This court has described substantial interference as one that is "'real'" or "'material,'" and not "a petty annoyance, a slight inconvenience, or an imaginary conflict." *State v. Robinson*, 20 Wn. App. 882, 884, 582 P.2d 580 (1978), *aff'd*, 92 Wn.2d 357, 597 P.2d 892 (1979). In *Robinson*, the defendant grabbed a young girl by her arm and said "do what I say or else," and then he began dragging her to his car. This court concluded that was a substantial restraint. *Id.* at 883-885.

Here, the record amply supports the jury's verdict on the restraint element. There was evidence that the defendant used force and intimidation to order the victim out of her house and into her car. Moments before he ordered her to get in the car, he beat her to the floor and held her down. When he then wanted her to get in the car, she testified that she obeyed out of fear. He drove to a location of his choosing, his girlfriend's house. He ordered Ms. Abrego to get out of the car and throw rocks at his girlfriend's car. He then ordered her to get back in the car and took her home, all the while subjecting her to reckless driving. Ms. Abrego's obedience was not a matter of avoiding an annoyance or an inconvenience. She had been beaten into submission and was fearful of further violence. She was forced from her home into a car without means of escape or control over the destination. On these facts, the jury was within its authority to conclude that Mr. Soria-Nanamkin restrained Ms. Abrego through intimidation.

The evidence was sufficient to support the jury's verdict.

No. 32461-3-III
*State v. Soria-Nanamkin*

*ER 404(b) Evidence*

Mr. Soria-Nanamkin next argues that the trial court erred in admitting evidence of his acts of prior violence against Ms. Abrego. The trial court carefully considered the matter and struck a proper balance in admitting the evidence.

Well-settled standards also govern this issue. Rulings admitting or excluding evidence are reviewed for an abuse of discretion. *In re Det. of Duncan*, 167 Wn.2d 398, 402, 219 P.3d 666 (2009). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

ER 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Before 404(b) evidence may be admitted, there must be a showing that "(1) the evidence serves a legitimate purpose, (2) the evidence is relevant to prove an element of the crime charged, and (3) the probative value outweighs its prejudicial effect." *State v. Magers*, 164 Wn.2d 174, 184, 189 P.3d 126 (2008). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Evidence is unfairly prejudicial where it creates an undue tendency

6

No. 32461-3-III
*State v. Soria-Nanamkin*

to suggest a decision on an improper basis. *State v. Cronin*, 142 Wn.2d 568, 584, 14 P.3d 752 (2000); *State v. Cameron*, 100 Wn.2d 520, 529, 674 P.2d 650 (1983).

Here, the trial court admitted the prior acts evidence to show Ms. Abrego's state of mind during the incident. Report of Proceedings (RP) at 509-510. Recognizing that Mr. Soria-Nanamkin had been charged with kidnapping and the lesser included offense of unlawful imprisonment, it was incumbent on the State to prove that the victim either had been "abducted" or "restrained." RCW 9A.40.020, .040. Both of these elements can be proved by showing that the victim was intimidated or threatened with deadly force. RCW 9A.40.010(1), (6).

Ms. Abrego testified that Mr. Soria-Nanamkin previously had physically abused her, made threats against her and her son, and also described an incident where Mr. Soria-Nanamkin drove her into a remote area and threatened to leave her. The prosecutor accordingly relied on this testimony to explain in closing why Ms. Abrego got in the car with him:

> [Deputy Prosecutor]: She was forced into this. And conduct that she did not want to engage in. She did it because of the threats, and the violence, and the history of violence. Her state of mind. It really brings it to life. That's why. That's why she got into that car.

RP at 560.

The prior acts evidence was important to establish the victim's acquiescence to the defendant's threats, a critical element of the State's case. Since this was the pivotal issue

7

on that count, the trial court understandably assigned the probative value of the evidence significant weight that outweighed the prejudicial effect of the evidence. This was a tenable reason to admit the evidence.

The trial court did not abuse its discretion in admitting the evidence.

*Ineffective Assistance of Counsel*

Mr. Soria-Nanamkin next argues that his counsel provided ineffective assistance because he should have sought to exclude the portion of his taped interview in which he denied striking Ms. Abrego since it was inconsistent with his trial testimony. This argument fails on multiple levels.

As with the two previous issues, very well-settled law governs our review of this claim. The Sixth Amendment to the United States Constitution guaranty of counsel requires that an attorney perform to the standards of the profession. Counsel's failure to live up to those standards will require a new trial when the client has been prejudiced by counsel's failure. *State v. McFarland*, 127 Wn.2d 322, 333-335, 899 P.2d 1251 (1995). In evaluating ineffectiveness claims, courts must be highly deferential to counsel's decisions. A strategic or tactical decision is not a basis for finding error. *Strickland v. Washington*, 466 U.S. 668, 689-691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under *Strickland*, courts apply a two-prong test: whether or not (1) counsel's performance failed to meet a standard of reasonableness and (2) actual prejudice resulted from counsel's failures. *Id.* at 690-692. When a claim can be disposed of on one ground, a reviewing

8

court need not consider both *Strickland* prongs. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726, *review denied*, 162 Wn.2d 1007 (2007).

With these standards in mind, resolution of this argument is straight forward. First, Mr. Soria-Nanamkin does not explain the grounds on which the statement could have been excluded. Without doing so, he cannot establish that his counsel erred, let alone so significantly erred that counsel's conduct was not reasonable. We also note that there was a very significant tactical reason to permit the statement into evidence. At the time the State rested its case, it was unclear whether the defendant would testify or not. RP at 437. Counsel could reasonably see utility in permitting the defendant's denial of culpability to be admitted by the prosecutor in the event the defendant chose not to testify.

The alleged error also would not have been prejudicial. Even if the statement had been suppressed, the prosecutor was still free to have used the suppressed statement to impeach Mr. Soria-Nanamkin's contrary trial testimony. *Harris v. New York*, 401 U.S. 222, 225, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971). Given the defendant's decision to testify contrary to the original statement, this admission still could have properly been considered by this jury. Thus, any error in considering it in the first instance was rendered absolutely harmless by the defendant's own testimony.

For all of these reasons, Mr. Soria-Nanamkin failed to establish that his counsel rendered ineffective assistance.

*Domestic Violence Perpetrator Evaluation and Treatment*

Lastly, Mr. Soria-Nanamkin contends that the court erred in requiring an evaluation once the jury declined to find that any of the crimes were committed against a household member. We believe the trial court was permitted to conclude that these crimes were domestic violence offenses.

This court reviews the imposition of a community custody condition for abuse of discretion. *State v. Valencia*, 169 Wn.2d 782, 793, 239 P.3d 1059 (2010). A trial court may impose a sentence condition that is required or permitted by law. *State v. O'Cain*, 144 Wn. App. 772, 775, 184 P.3d 1262 (2008). The legislature has provided courts with discretion to impose community custody conditions that require the defendant to participate in rehabilitative programs related to the crime. RCW 9.94A.703(3)(d). Generally, a discretionary condition should be supported by evidence in the record that the condition is crime related. *Cain*, 144 Wn. App. at 775. The absence of a domestic violence designation by the jury does not preclude domestic violence treatment. *State v. Hagler*, 150 Wn. App. 196, 201, 208 P.3d 32 (2009).

RCW 9.94A.703(4)(a) states, in part, that the court may order "an offender convicted of a crime of domestic violence, as defined in RCW 10.99.020" "to participate in a domestic violence perpetrator program." In turn, RCW 10.99.020(3) defines "family or household members" in part to include people who have dated and resided together in the past. The definition of "domestic violence" under the statute includes a "family or

10

household member" who commits second degree assault, first degree burglary, or unlawful imprisonment against another household or family member. RCW 10.99.020(5)(b), (h), (q).

The jury was properly instructed on the meaning of "family or household members" in accordance with the terms of RCW 10.99.020(3). Clerk's Papers (CP) at 358. Each of the four special verdict forms then asked, "as to" each "count," "Were Francisco Javier Soria-Nanamkin and Tanya Abrego members of the same family or household?" CP at 365-368. Given that the jury answered "no" to the question on each form, Mr. Soria-Nanamkin argues that the trial court could not order treatment for a "domestic violence offense" since the jury concluded the two were not family members.[1]

We would give the verdict forms preclusive effect on this finding *if* they had correctly asked the question presented by the facts of this case. The definition of "household member" includes adults who had lived together in the past but were not currently living together. CP at 358. That was the fact pattern here. The defendant and victim had dated and lived together in the past, although they were not doing so at the time of the offenses. However, the special verdict form did not ask the question if the couple "*were or had been* members of the same family or household." Instead, it simply

---

[1] Mr. Soria-Nananmkin does not argue that only the jury could determine that the offenses were domestic violence offenses. Instead, he argues that the trial court made no such finding. We believe the court's determination to order the treatment was such a finding, if one was explicitly needed.

11

No. 32461-3-III
*State v. Soria-Nanamkin*

asked "as to" each count if the two "were" members of the same family or household. The jury understandably said "no" even though both the defendant and the victim had testified to their prior relationship. There was no family or household member relationship *at the time of the crimes*, which was the question the form asked the jury to answer.

Since the special verdict forms did not ask the correct question, the trial judge was not bound by the answer under the facts of this case. Accordingly, the court properly exercised its discretion to order an evaluation and treatment of Mr. Soria-Nanamkin due to his three domestic violence offenses.

The judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____        _____
Fearing, J.                                                     Lawrence-Berrey, J.

12