[No. 81230-6.   En Banc.]
Argued May 12, 2009.     Decided October 22, 2009.

*In the Matter of the Detention of* BRYAN DUNCAN, *Petitioner.*

*Valerie Marushige*, for petitioner.

*Robert M. McKenna, Attorney General, Sarah B. Sappington, Senior Counsel,* and *Joshua Choate* and *Brooke E. Burbank, Assistants,* for respondent.

¶1 CHAMBERS, J. — Bryan Duncan was convicted of three counts of first degree child molestation in 1992 and 1993. In 1996, the State petitioned to have Duncan civilly committed as a sexually violent predator (SVP) under chapter 71.09 RCW. Nine years later, in 2005, a jury found that Duncan was an SVP and the trial court ordered him committed to the Special Commitment Center (SCC). Duncan argues that the trial court abused its discretion in making several evidentiary rulings and that he did not receive a fair trial. Upon careful review of the record, we hold that the trial court did not abuse its discretion and affirm the Court of Appeals.

## FACTS

¶2 In 1992, Duncan, then 16 years old, was convicted of first degree child molestation and was committed to the Department of Juvenile Rehabilitation. He was convicted of two more counts of first degree child molestation in 1993[1] and was committed to the Maple Lane School, a juvenile facility in Centralia.

¶3 While a resident at Maple Lane, Duncan had a variety of disciplinary problems. He had trouble controlling his anger and was often abusive to staff and other residents. On numerous occasions he was found masturbating and exposing himself to staff members. While participating in sex offender treatment, Duncan admitted to sexually abusing between 20 and 40 children and that he continued to fantasize about having sex with children. Some of these fantasies included mutilating and cannibalizing children.

¶4 In 1996, just prior to his scheduled release from Maple Lane, Duncan was evaluated by Dr. Leslie Rawlings, a licensed psychologist. Dr. Rawlings concluded that Duncan suffered from schizophrenia and pedophilia and that he was more likely than not to reoffend if released into the community. Following that report, the State filed a petition to have Duncan civilly committed as an SVP under chapter 71.09 RCW. Duncan was transferred to the SCC while he awaited trial.

¶5 Despite numerous trial dates set over the next four years, by 2000, Duncan's trial had still not been held. On May 9, 2000, the court granted the State's CR 35 motion to have Duncan reevaluated by Dr. Rawlings during pretrial discovery. Though no formal objection was filed, Duncan refused to submit to any further examinations by Dr. Rawlings and the court granted CR 37 sanctions. Dr. Rawlings never personally reevaluated Duncan.

---

[1] According to the certification for determination of probable cause, Duncan was convicted for acts that occurred when he was between 13 and 16 years old. Duncan's victims were between the ages of 6 and 11.

¶6 Trial finally began in October 2005.[2] As part of its case the State offered the expert testimony of Dr. Rawlings who, in addition to his initial evaluation of Duncan in 1996, testified he was basing his opinion on reports filed by others while Duncan was confined at Maple Lane and the SCC. On cross-examination, defense counsel emphasized that Dr. Rawlings's opinions about Duncan's behavior after 1996 were "based on what others have written." Report of Proceedings (RP) (Nov. 3, 2005) at 1256. On redirect the State asked Dr. Rawlings if he would have liked the opportunity to meet with Duncan to update his evaluation. Dr. Rawlings responded, "yes." *Id.* at 1328. When the State asked Dr. Rawlings what prevented him from conducting an updated evaluation, defense counsel motioned for a mistrial, arguing that after this court's decision in *In re Detention of Williams*, 147 Wn.2d 476, 55 P.3d 597 (2002), the State is not entitled to a pretrial CR 35 examination and to highlight Duncan's decision not to participate in one was unfairly prejudicial. After considering the issue overnight, the trial judge concluded that the State could show that Dr. Rawlings was denied an opportunity to conduct another interview with Duncan.

¶7 Trial testimony also established that if released, Duncan planned to live with Dion Walls. Walls was a former sex offender with whom Duncan entered into a friendship while confined at the SCC. On cross-examination, and over objection, the State asked defense expert Dr. Robert Wollert if he was aware that Duncan planned to live with Walls after release and whether he knew that Walls had a criminal history of sexually offending against children. Dr. Wollert responded, "yes." RP (Nov. 9, 2005) at 1815. Despite allowing

---

[2] We are certainly concerned about the extraordinarily long delay between the time the State filed its petition to have Duncan committed as an SVP and the time the case finally went to trial. Duncan spent over nine years at the SCC as he waited to have a jury determine if he in fact should be committed. While we recognize that some delays are often inevitable when taking a case to trial, the time scale of the postponement in this case is troubling. However, this issue is not before us, and it is apparent from the record that the delays to trial were driven mostly by Duncan or defense counsel. Duncan filed no less than 26 waivers of his right to a speedy trial. *See* Index to Clerk's Papers at 14-16.

the State to elicit this testimony regarding Walls's past criminal history, the court refused to allow Duncan to offer evidence regarding aspects of Walls's own SVP case including the fact that Walls, apparently, had not reoffended.

¶8 Duncan also attempted to show at trial that his refusal to participate in sex offender treatment while at the SCC was due to the ineffectiveness of the treatment offered. While the trial court allowed Duncan to testify on his opinion about the effectiveness of the program, the court refused to allow Duncan to elicit expert testimony about the quality of treatment at the SCC. The trial court specifically refused to allow Duncan's attorney to cross-examine the State's expert witness, Dr. Paul Spizman, about his opinion regarding the success or failure of the treatment program, finding that such evidence was beyond the scope of the proceeding. The trial court also prohibited Duncan from eliciting testimony from his own expert, Dr. Robert Halon, about the quality of treatment at the SCC.

¶9 After a two week trial with extensive expert testimony on both sides, the jury found that Duncan was an SVP. Duncan appealed, arguing the trial court made several erroneous evidentiary rulings. The Court of Appeals affirmed. *In re Det. of Duncan*, 142 Wn. App. 97, 110, 174 P.3d 136 (2007). This court accepted review. *In re Det. of Duncan*, 164 Wn.2d 1024, 196 P.3d 137 (2008).

## ANALYSIS

■ ■ ¶10 Duncan's arguments focus on the various evidentiary rulings the trial judge made during the trial. A trial court's evidentiary rulings are reviewed for abuse of discretion. *State v. McDonald*, 138 Wn.2d 680, 693, 981 P.2d 443 (1999). A trial court abuses its discretion if its decision is manifestly unreasonable or is based on " 'untenable grounds, or for untenable reasons.' " *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006) (quoting *Associated Mortgage Investors v. G.P. Kent Constr. Co.*, 15 Wn. App. 223, 229, 548 P.2d 558 (1976)). A trial court's

decision is manifestly unreasonable if it "adopts a view 'that no reasonable person would take.'" *Id.* (quoting *State v. Rohrich,* 149 Wn.2d 647, 654, 71 P.3d 638 (2003)). A decision is based on untenable grounds or for untenable reasons if the trial court applies the wrong legal standard or relies on unsupported facts. *Id.*

### *Dr. Rawlings*

¶11 Duncan first argues that the trial court abused its discretion by admitting testimony regarding his refusal to submit to a second mental examination by Dr. Rawlings. CR 35 allows a court to order a party to submit to a mental examination by a psychologist if the party's mental condition is in controversy. However, in 2002, we held that "the State is not entitled to a CR 35 mental examination of an individual for whom the State seeks commitment as a sexually violent predator." *In re Williams,* 147 Wn.2d at 479. After analyzing CR 35 against chapter 71.09 RCW, we concluded that the civil rule was inconsistent with the special proceedings set out in the SVP statute. *Id.* at 491. We limited the State's ability to conduct mental examinations in SVP proceedings to the procedures set forth in RCW 71.09.040(4).[3] *Id.*

¶12 Duncan contends that the trial court's decision was based on an erroneous understanding of the law and that because the court had no authority to force him to submit to a CR 35 examination, evidence of his refusal was irrelevant and prejudicial. Specifically he asserts that evidence regarding his refusal to agree to a second examination allowed the jury to believe he "had reason to be apprehensive about another evaluation and that he was being less than

---

[3] Although Duncan does not argue to the contrary, we emphasize that evidence that Duncan refused to be examined under CR 35 does not implicate any constitutional due process right he might have had. We have already determined that SVP civil commitment respondents do not have a due process right to refuse a CR 35 examination. *In re Det. of Audett,* 158 Wn.2d 712, 726, 147 P.3d 982 (2006).

honest and open about his rehabilitation." Pet. for Review at 10. But, as the trial court noted, it was Duncan who first raised the issue of Dr. Rawlings's failure to examine him after the initial examination in 1996. In explaining his decision, the trial court specifically noted that "the defense has raised a point that this [Rawlings's conclusion] was all based on hearsay reports." RP (Nov. 4, 2005) at 1340. The trial court concluded that Duncan had opened the door to the State's questioning in this area. Under the circumstances, it was reasonable for the trial judge to conclude that allowing the State's response was appropriate in light of Duncan's attack on Dr. Rawlings's credibility.

¶13 With regard to Duncan's claim that Dr. Rawlings's testimony was overly prejudicial, the record demonstrates that in fact very little was said about the refusal to submit to a second examination. After the court made its ruling, the following exchange took place between counsel for the State and Dr. Rawlings:

Q. When we broke yesterday I was just in the process of asking you whether you would like to have had an opportunity to meet with Mr. Duncan again.

A. Yes.

Q. That is yes, you would have liked to?

A. Yes, you were asking me that, and, yes, I would like to have.

Q. And did you request an opportunity to interview him again?

A. I did through the Attorney General's Office.

Q. And were you able to interview him?

A. No.

*Id.* at 1341. No further testimony was offered regarding Duncan's decision not to be reevaluated by Dr. Rawlings. When the jury asked Duncan why he chose not to be reevaluated for the trial,[4] the court answered for Duncan,

---

[4] By stipulation, jurors were allowed to ask questions of each witness after the conclusion of each witness's testimony.

stating, "And to the members of this jury, Mr. Duncan did not wish to do so, and the Court did not order him to participate in further evaluation." RP (Nov. 9, 2005) at 1921.

¶14 While it is possible to view these exchanges as having some prejudicial effect on Duncan, taken in context, we do not believe that the trial court's decision to admit them was manifestly unreasonable. The trial judge concluded that the testimony was proper as a response to the defense's attack on the expert's credibility. It was Duncan's attack that opened the door to the State's response. In addition, the testimony at issue was of a very limited nature. We hold the trial judge did not abuse his discretion.

### Walls

¶15 Duncan next assigns error to the trial court's decision to admit testimony that Duncan planned to live with Walls, a convicted sex offender, after release and by refusing to admit evidence that Walls had not reoffended after returning to the community. Duncan argues that evidence that Walls was a convicted sex offender was unfairly prejudicial on its own account and was compounded by the court's failure to allow rebuttal evidence.

¶16 As an initial matter, we note that a fact finder in an SVP civil commitment proceeding may consider conditions that would exist or that the court would have the authority to order in the absence of a finding that the person is a sexually violent predator. RCW 71.09.060(1). Evidence of whom a defendant intends to live with upon release into the community is relevant information in an SVP commitment proceeding. The fact that Duncan intended to live with a former sex offender was properly presented to the jury.

¶17 However, the trial court's subsequent decision to deny Duncan the opportunity to elicit testimony showing that Walls had not reoffended since his release is troubling. Because the trial court determined that Walls's prior criminal history was relevant, fairness would seem to dictate

that evidence of his current behavior would also be relevant on rebuttal. But when reviewing for an abuse of discretion, we will not substitute our judgment for that of the trial court and will affirm unless no reasonable person could have come to the same conclusion. *State v. Lord*, 161 Wn.2d 276, 295, 165 P.3d 1251 (2007).

¶18 The trial judge had been addressing issues regarding whether to allow evidence about Walls's case since well before the trial began. Prior to trial the State filed a motion in limine to exclude reference to Walls's own SVP case, which had been dismissed by the State prior to his trial. Duncan's defense counsel had suggested to the State that Walls's case was indistinguishable from Duncan's case. The State was concerned that Duncan would attempt to elicit testimony from Dr. Wollert that "Mr. Duncan is no different than Mr. Walls."[5] RP (Oct. 24, 2005) at 3. During argument the judge expressed his concern with offering evidence on the Walls case, saying, "I don't see us getting into what somebody else did in some other similar case, because the problem with that is that it is too hard to . . . correctly inform the jury about the Walls case." *Id.* at 12. The judge continued:

> [B]ecause it's just too confusing. It's collateral really, and it's very collateral. You know, I could see that you can see that there's some logical connection to it, but we can't possibly try that whole case and bring this jury up to speed so that they compare it to this case. It would be -- it would just be a quagmire.

*Id.* at 13.

¶19 At trial, when Duncan's counsel raised concerns about the State's question to Dr. Wollert regarding Walls's criminal history, those concerns were presented as

---

[5] The State's expert who evaluated Walls recommended that the case not be pursued. Based in part upon this recommendation, the State dismissed its petition to have Walls committed as an SVP. Duncan's counsel argued in pretrial proceedings that he saw no difference between Duncan and Walls and that the State's decision to pursue commitment for one and not the other was relevant. The State countered that the two cases were different and what one expert recommended in one case was irrelevant to determining whether Duncan was likely to reoffend.

reargument of the motion in limine. During a sidebar, Duncan's counsel argued:

> I think the state in this line of questioning regarding Dion Walls has opened the doors -- remember we had the motion in limine I wanted to get in let's talk about Dion Walls and how he is the same thing as Bryan and how he got released, and now the state is going into Dion Walls, which we were prevented from doing, and that apparently does not seem to apply to the state. If that is the case, we are entitled to bring in all of the information about Dion Walls.

RP (Nov. 9, 2005) at 1812. Defense counsel continued, saying:

> The whole idea here is that the state strenuously objected to information [with] regards to Dion Walls. Information that leads to his success out in the community and whether he is being successful are the things that apparently we're not going to be able to get involved in because he has not reoffended, and he hasn't done anything wrong, and I'm going to -- and the question I have is this. These are the same factors. You know, in a lot of ways they are the same type of individual who didn't have controls, and yet they are being successful in the community. I should at least have the right to say, "And not only that; Dion Walls hasn't reoffended. Dion Walls is being successful in the community, and he's exactly like Bryan Duncan."

*Id.* at 1814-15. The judge responded by first noting that Duncan had not really made an objection to the State's question to Dr. Wollert.[6] He then reasoned, "I see a big distinction between going into the legal aspects of Mr. Walls's case and the actual factual relationship between these two individuals." *Id.* at 1815.

¶20 Although Duncan now makes what is essentially an ER 403 objection to the court's ruling, that is not what was before the judge at the time. Instead, Duncan used the question posed to Dr. Wollert as an opportunity to reargue

---

[6] The judge stated, "Well, this isn't really an objection. I guess you're trying to raise a red flag here. . . . I don't really have an objection in front of me." RP (Nov. 9, 2005) at 1815. Duncan's defense counsel offered no response or objection to the court's statement.

that he should be allowed to offer testimony regarding Walls's entire case to show a connection to Duncan. He did not argue that the testimony on the subject was prejudicial, only that it opened the door for him to make legal comparisons between his case and Walls's.

¶21 Generally, an ER 403 objection is not of constitutional magnitude and may not be raised for the first time on appeal. *State v. Elmore*, 139 Wn.2d 250, 283, 985 P.2d 289 (1999) (citing *State v. Chase*, 59 Wn. App. 501, 508, 799 P.2d 272 (1990)); RAP 2.5(a). Here there was no ER 403 objection before the court. While in hindsight, admission of evidence that Walls had not reoffended might seem appropriate, we reiterate that we are reviewing the record for an abuse of discretion and must consider what was actually before the judge. As a reviewing court, our role is to determine whether the judge's ruling was reasonable in light of the circumstances, not whether we would have come to the same conclusion if the decision had been ours to make. Here, even if the objection had been properly made, considering the argument before him, the judge made a reasonable decision to limit the amount of evidence that would be admitted regarding Walls. Duncan's counsel was clear that he did not want to limit evidence to the fact that Walls had not reoffended since his release, but rather he wished to compare the Walls case to Duncan's. On this record we conclude that the court's decision to limit the testimony was reasonable and that there was no abuse of discretion.

*SCC Treatment*

¶22 Duncan's remaining arguments focus on the trial court's decision not to allow expert testimony regarding the effectiveness of the treatment program at the SCC. He first argues that his due process rights were violated when the trial court precluded him from meaningfully cross-examining the State's expert witness, Dr. Paul Spizman. The State called Dr. Spizman to testify about Duncan's behavior at the SCC and about his failure to participate in treatment.

On direct examination, Spizman testified that he "didn't see any indication that he [Duncan] has fully invested himself for any significant period of time in the treatment program." RP (Nov. 4, 2005) at 1407. Later, defense counsel attempted to cross-examine Dr. Spizman about the overall successes or failures of treatment at the SCC and the State objected. The trial court affirmed the objection, reasoning that evidence of the general effectiveness of the treatment program at the SCC was irrelevant. The judge noted that the case was about Duncan, not about the treatment program at the SCC.

¶23 Under ER 611(b), cross-examination should be limited to the issues that were raised on direct. The State focused its direct examination of Dr. Spizman on issues pertaining specifically to Duncan's willingness to participate in treatment and Duncan's personal successes or failures within the program. The trial judge allowed Duncan to question Dr. Spizman about how success in treatment was measured for individuals engaged in the program and about Duncan's individual progress. But it was within the judge's discretion to determine whether cross-examination regarding the general success rate of the entire SCC program was appropriate for a case that dealt with the specific issue of whether Duncan was an SVP and not with whether the treatment offered was effective. *See In re Det. of Turay*, 139 Wn.2d 379, 403-04, 986 P.2d 790 (1999). We hold the trial court did not abuse its discretion.

¶24 Duncan's second argument on this issue is based on the trial court's decision to preclude Duncan from eliciting testimony regarding the effectiveness of the SCC treatment program from his own expert witness, Dr. Robert Halon. Duncan attempted to ask Dr. Halon about the quality of the SCC program, and the State objected, arguing that the issue was irrelevant. The trial court agreed and excluded testimony from Dr. Halon on this issue.

¶25 Again, the trial court determined that testimony regarding the success rate of the SCC treatment program was beyond the scope of the issue in this case; namely,

whether Duncan was likely to reoffend. The Court of Appeals in reaching its decision reasoned that the SCC program "is barely relevant" to the question of whether Duncan was likely to reoffend and that it "in any event, is a side issue." *In re Duncan*, 142 Wn. App. at 109-10. We agree. The trial court did not abuse its discretion by prohibiting testimony on this issue.

## CONCLUSION

¶26 The trial court's evidentiary rulings were reasonable in light of the circumstances. We hold that there was no abuse of discretion and affirm the Court of Appeals.

C. JOHNSON, MADSEN, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., and THOMPSON, J. PRO TEM., concur.

¶27 ALEXANDER, C.J. (dissenting) — I concur in the result that Justice Sanders would have us reach, but for slightly different reasons. I agree entirely with his conclusion that it was error to exclude testimony that Dion Walls had not reoffended. As for the testimony of Dr. Leslie Rawlings, I agree with Justice Sanders that there was reversible error, but not because the testimony was irrelevant and prejudicial. In my view, the judge, in contravention of article IV, section 16 of the Washington Constitution, impermissibly commented on the evidence by stating to the jury that Bryan Duncan "did not wish" to be reevaluated. Verbatim Report of Proceedings (Nov. 9, 2005) at 1921. It was that statement, more than the testimony of Dr. Rawlings, that had the capacity to convey to the jury that Duncan was an "obstructionist." Dissent (Sanders, J.) at 412.

¶28 SANDERS, J. (dissenting) — The majority holds the trial court did not err in several evidentiary rulings. Majority at 399. I disagree.

¶29 The trial court erred by admitting evidence Bryan Duncan refused to submit to a psychological examination during discovery. The majority correctly notes we have previously held a detainee in a sexually violent predator petition action cannot be compelled to submit to an examination under CR 35. Majority at 403; *In re Det. of Williams*, 147 Wn.2d 476, 491, 55 P.3d 597 (2002). But the majority affirms the trial court, which informed the jury Duncan did not want to be reevaluated and allowed Dr. Leslie Rawlings to testify he would have liked to reexamine Duncan but was unable to do so. Majority at 404-05.

¶30 Since Duncan could not be ordered to submit to an evaluation per *Williams*, allowing evidence of Duncan's refusal was irrelevant and prejudicial. 147 Wn.2d at 491. The trial judge reasoned that because the case had dragged on for years and Duncan asked Dr. Rawlings whether he relied on hearsay information for his diagnosis because he had not performed an examination on Duncan since his initial evaluation in 1996, "fairness" entitled the State to show it was not "inept or incompetent or lazy . . . ." Verbatim Report of Proceedings (RP) (Nov. 3, 2005) at 1340. The judge reasoned:

> So I think in fairness to the state and – and the defense has raised a point that this was all based on hearsay reports, which they need to do. . . . But I think that we get closer to the truth by frankly putting it out there and let the jury decide, and they're entitled to know that this professional's opportunity to have a subsequent interview was denied.

*Id.* This reasoning is highly questionable because the testimony is irrelevant and prejudicial. Dr. Rawlings is not the one on trial here, nor is the State. Rather, it is Duncan's liberty on the line. The reason Duncan did not have a more recent examination with Dr. Rawlings is irrelevant because it did not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. But nonetheless the State was allowed to show it was not Dr. Rawlings's inability to perform another

examination but rather Duncan's refusal to submit to another examination, his right under *Williams*, that forced Dr. Rawlings to rely on hearsay. 147 Wn.2d at 491. This evidence did not make Dr. Rawlings's testimony more credible but did make Duncan out as an obstructionist.

¶31 The majority admits, "[I]t is possible to view these exchanges as having some prejudicial effect on Duncan." Majority at 405. It essentially renders Duncan's right to refuse an evaluation under *Williams* meaningless by affirming the trial judge's ruling. 147 Wn.2d at 491; majority at 405.

¶32 The trial court also erred by admitting evidence of a proposed roommate's criminal sexual history while excluding evidence that he had not reoffended since his release. The majority finds this "troubling" but nonetheless concludes, "[T]he court's decision to limit the testimony was reasonable and . . . there was no abuse of discretion." Majority at 405, 408. I find this more than merely troubling. If it was relevant to show the proposed roommate's sexual history, it was just as relevant to show his conduct in the community. "All relevant evidence is admissible," ER 402, and the trial court has no discretion to disallow it except under ER 403, which is not at issue here.

¶33 Proceedings for the indeterminate commitment of convicted sex offenders "whether denominated civil or criminal are subject both to the Equal Protection Clause of the Fourteenth Amendment, as we held in *Baxstrom v. Herold*, 383 U.S. 107[, 86 S. Ct. 760, 15 L. Ed. 2d 620 (1966),] and to the Due Process Clause." *Specht v. Patterson*, 386 U.S. 605, 608, 87 S. Ct. 1209, 18 L. Ed. 2d 326 (1967). Due process requires that the person "be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have a right to cross-examine, and to offer evidence of his own. . . ." *Id.* at 610.

¶34 Despite allowing the State to elicit testimony regarding Dion Walls's past criminal history, the trial court

refused to allow Duncan to admit evidence Walls had not reoffended since being released back into the community. The State argued the criminal history of Walls is highly probative because it tended to prove Duncan's likelihood to reoffend and corroborated Dr. Rawlings's diagnosis of Duncan. That reasoning is vastly suspect, as again, it is Duncan who is on trial, not Walls. Still, if the trial court admitted this evidence, arguably unfairly prejudicial, there is no reason why Duncan should be denied the opportunity to show Walls was a juvenile offender who has since stayed clean. The trial court should have at least allowed the testimony that Walls had not reoffended and was being successful in the community. Rather, the jury was simply left with the testimony that he was a sex offender, allowing the State to argue, "[I]f your plan is to go live with another person who has a history of molesting children that's a big aggravating risk factor." RP (Nov. 9, 2005) at 1812. A trial court does not have discretion to limit relevant evidence simply because it wants to do so. ER 402.

¶35 The State was able to dub Walls "a child molester" and highlight his relationship with Duncan without any mitigating information about Walls's postrelease behavior. This had a strong effect on the jury, which concentrated many of its questions for Duncan on Walls's history. The State also used Walls's history as a sex offender repeatedly in closing argument, amplifying the prejudice. When jurors asked Duncan about his intention to move in with Walls and what he would do if he discovered Walls was sexually molesting children in the apartment they shared, Duncan answered that he would leave immediately and call the police.

¶36 Evidence may be unfairly prejudicial if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action. *Carson v. Fine*, 123 Wn.2d 206, 223, 867 P.2d 610 (1994). Evidence of Walls's criminal history was unfairly prejudicial because Duncan was not able to respond to it and offer evidence of Walls's behavior now. In essence,

Duncan's due process rights were violated because he was not permitted to offer his own evidence about Walls, nor could he examine Dr. Robert Wollert regarding Walls. The trial court abused its discretion when it did not allow evidence that Walls had not reoffended since his release and that he was successful in the community.

¶37 The trial court violated Duncan's rights, to his prejudice, in these two evidentiary rulings. I would reverse the Court of Appeals and remand for a new trial.

¶38 Accordingly, I dissent.

Reconsideration denied January 6, 2010.