# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Detention of: | No. 47336-4-II |
| GEORGE EDWARD HANCOCK, JR., | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — George Edward Hancock, Jr. appeals his civil commitment as a sexually violent predator under RCW 71.09.060, arguing that (1) the trial court erroneously instructed the jury; (2) the State failed to prove that he was currently dangerous; (3) the trial court erroneously admitted an illustrative exhibit; (4) the trial court violated his right to counsel by failing to inquire into his reasons for requesting a mistrial; and (5) the State committed prosecutorial misconduct. We disagree and affirm Hancock's civil commitment as a sexually violent predator.

## FACTS

Hancock was convicted of first degree rape of a child in 2000. Hancock was sentenced to prison. Before Hancock's scheduled release, the State petitioned to commit him pursuant to chapter 71.09 RCW. The State retained Dr. Richard Packard to evaluate Hancock. Hancock proceeded to trial in early 2015.

No. 47336-4-II

A.     DR. PACKARD

Prior to Dr. Packard's testimony, the State noted that it planned to offer exhibit 44[1] and other illustrative exhibits during Dr. Packard's testimony.  The State requested that the trial court give an instruction regarding illustrative exhibits based on 6 *Washington Practice: Washington Pattern Jury Instructions: Civil* 6.06, at 79 (6th ed.) (WPI).

During trial, after the State offered an illustrative exhibit during Dr. Packard's testimony, the trial court gave the jury an instruction regarding the illustrative exhibits, which primarily mirrored WPI 6.06.  The trial court admitted various exhibits for illustrative purposes throughout the previous day, but the trial court did not instruct the jury on illustrative exhibits at that time.

1.     Exhibit 44

Hancock objected to the State's exhibit 44, arguing that because it was not to scale, it was misleading and prejudicial.  He also argued that it was prejudicial because "it's clearly intended to place Mr. Hancock in the red part in the middle as sort of a bullseye."  5 Verbatim Report of Proceedings (VRP) at 674.  Hancock noted, "It may be . . . that there are unreported sex offenses, arrested ones, charged ones, convicted ones, but those numbers are unknown.  And I believe that will be the testimony by at least one, if not both, experts."  5 VRP at 674.

During the State's offer of proof, Dr. Packard testified that he did not prepare exhibit 44 and that it did not contain any numbers.  Dr. Packard stated that exhibit 44 would be used for illustrative purposes in conjunction with a discussion of risk assessment tools, including the "Static-99."  6 VRP at 787.  Dr. Packard explained that the Static-99 "measures the proportion of

_____

[1] Exhibit 44 is not in the record on appeal.

2

people or estimates the proportion of people who, when released from prison, were detected via conviction or charging of committing a new rap sheet, which means officially labeled sex offense within a certain period of time." 6 VRP at 788. Dr. Packard also explained that the Static-99 underestimates "true risk" because of under-reporting. 6 VRP at 788. Exhibit 44 was "intended to reflect the concept that there is under-reporting" and would "help illustrate that notion [of underreporting] to the jury." 6 VRP at 783, 789. The trial court admitted exhibit 44 for illustrative purposes only.

During Dr. Packard's trial testimony, Dr. Packard testified about his evaluation of Hancock and the risk assessment tools he used to assess Hancock's risk of re-offending. Dr. Packard also testified that the risk assessment tools are limited because they look at charging or convicting, while the statute "is asking for a likelihood to engage, which is a broader category." 6 VRP at 881. So "from a conceptual perspective, [exhibit 44] is looking at the phenomenon that there are far more sex offenses that take place than get reported." 6 VRP at 882.

2.     Dr. Packard's Other Testimony

Dr. Packard testified that, based on his evaluations, Hancock presented a high risk of reoffending if released. In his opinion, Hancock was "more likely than not to engage in acts of predatory sexual violence" if released. 7 VRP at 936. Dr. Packard testified that, based on his review of Hancock's history, Hancock has not gone longer than about eight months in the community without reoffending. Further, Hancock meets "the criteria for pedophilic disorder" based on the extended period of offenses, which were "recurrent and have involved a number of children, just even from the offense convictions." 5 VRP at 770.

B.    OTHER TRIAL TESTIMONY

Hancock testified that he had "a lot" of victims when he was between the ages of 8 and 23 years old, but that he had only one victim between 1988 and 1999. 9 VRP at 1345. And if he were released, he would live with his mother and sister. Hancock also testified that he and his family had discussed that if he were released, he would not want to be around children and minors would not be allowed at the family's residence. Hancock had spoken to his future parole officer, and he understood his post-release responsibilities. Hancock also understood from his future parole officer that he "would be wearing an ankle bracelet." 9 VRP at 1356.

Hancock's mother testified that if released, Hancock would live at her house. She was aware that he had committed crimes against children, but not the "actual acts that were involved." 7 VRP at 1037. When asked whether she had talked to Hancock about his risk factors or triggers for re-offense, his mother responded: "I don't think he could" and that "he has truly quite a bit of remorse." 7 VRP at 1039.

Hancock's sister testified that she was "aware of [her] brother's history," but that she does not "know the details." 7 VRP at 1044. Hancock's sister also testified that Hancock "has not talked to [her] about certain risk factors or possible triggers for re-offense." 7 VRP at 1050.

C.    JURY INSTRUCTIONS

Hancock proposed a jury instruction to explain to the jury that "more likely than not as used in these instructions means that the probability of respondent's reoffending exceeds 50 percent." Clerk's Papers (CP) at 743. The trial court denied Hancock's proposed instruction and informed the parties that its denial does not "preclude argument as to what ["more likely"] means, but the language of the statute and the burden will be contained in the instruction." 1 VRP at 36.

4

In relevant part, the trial court instructed the jury that:

> The evidence that you are to consider during your deliberations consists of the testimony that you have heard from witnesses, and the exhibits that I have admitted, during the trial. If evidence was not admitted or was stricken from the record, then you are not to consider it in reaching your verdict.
>
> Exhibits may have been marked by the court clerk and given a number, but they do not go with you to the jury room during your deliberations unless they have been admitted into evidence. The exhibits that have been admitted will be available to you in the jury room.

CP at 1075 (Jury Instruction 1).

The trial court also instructed the jury that the State had the burden to prove each element beyond a reasonable doubt. Specifically, the trial court instructed the jury that to find that Hancock was a sexually violent predator, the State must prove, beyond a reasonable doubt, that

> (1) That [Hancock] has been convicted of a crime of sexual violence, namely Rape of a Child in the First Degree or Indecent Liberties with a Child Under the Age of 14; and
> (2) That [Hancock] suffers from a mental abnormality or personality disorder that causes serious difficulty in controlling his sexually violent behavior; and
> (3) That this mental abnormality or personality disorder makes [Hancock] likely to engage in predatory acts of sexual violence if not confined to a secure facility.

CP at 1082 (Jury Instruction No. 6). The trial court further instructed the jury that "[l]ikely to engage in predatory acts of sexual violence if not confined in a secure facility," means that Hancock "more probably than not will engage in such acts if released unconditionally from detention in this proceeding." CP at 1085 (Jury Instruction No. 9).

5

D.    HANCOCK'S MOTION FOR MISTRIAL

After the trial court instructed the jury, but before closing arguments, Hancock stated: "I want to get on the record my objection to and motion for mistrial due to ineffective assistance of counsel." 10 VRP at 1421. Hancock was "upset about the examination, my testimony, this morning. We [Hancock and defense counsel] spent six months going over what my testimony was going to be and they changed it." 10 VRP at 1421. The trial court denied Hancock's motion, finding, "There's no specificity indicated. The only thing I can see that you're upset about is whether or not you're still here today."[2] 10 VRP at 1421.

E.    CLOSING ARGUMENTS

During closing arguments, the prosecutor argued:

> Now, for the first time in his testimony yesterday, we also find out that he claims—he didn't have a single victim between 1988 and—until [victim in 1999]. So [victim in 1999] was his only victim between being incarcerated in 1988 and 1999. That's the first time we ever heard of that.
>
> Also, first time that we've ever heard that—apparently he hasn't been released yet—already has a probation officer that he's talked to, and he's been told he's going to have an ankle monitor. First time we heard that.

10 VRP at 1446. The prosecutor also argued that "[Hancock's mother and sister] don't know his offense history or the details or the triggers for re-offense. They have no clue as to what he has done or how he has gone about doing it." 10 VRP at 1455. Finally, the prosecutor argued that

---

[2] After the State and Hancock had rested, but before the trial court instructed the jury, Hancock addressed the court. Hancock stated: "I have no desire to take part in the closing argument part of this trial, whether it be today or tomorrow, even if I am held here. There is nothing I can do for that. I have no desire to be here." 9 VRP at 1414. The trial court ruled, "I'm not going to facilitate your absence by having you returned to the unit tonight. So at that point, I guess it's your choice between you and counsel as to whether you participate in the morning." 9 VRP at 1414.

Hancock's mother and sister think "it's okay to be around kids as long as adults are present." 10 VRP at 1456.

Hancock's closing argument discussed the standard of proof. Hancock argued, "[T]he first element is not in dispute at all. You know, the history is there. All [the State has to do] is show you a certified copy of the judgment and sentence. That's a done deal."[3] 10 VRP at 1490-91; *see accord* 4 VRP at 545 (similar statements made during opening arguments). Hancock further argued that the "manner and mode of this abuse was not necessary to that proof, but it's important. The doctors need to know these things, and they're going to say so in giving their opinions. Now you know them, unfortunately, and that's not a happy event for you. But it's only that part of the case." 10 VRP at 1491.

The jury found that Hancock was a sexually violent predator. The trial court entered an order of commitment under RCW 71.09.060. Hancock appeals.

## ANALYSIS

A.  JURY INSTRUCTIONS

1.  "Exceeds 50 Percent" Proposed Jury Instruction

Hancock argues that the trial court erred by not instructing the jury that the State has the burden to prove that the likelihood of Hancock engaging in predatory acts of sexual violence exceeds 50 percent. Specifically, Hancock asserts that the trial court's instructions "did not make

---

[3] Based on the trial court's instructions, the first element is: "That [Hancock] has been convicted of a crime of sexual violence, namely Rape of a Child in the First Degree or Indecent Liberties with a Child Under the Age of 14." CP at 1082 (Jury Instruction No. 6).

the applicable standard manifestly clear" and "left the jury to guess" about the standard. Br. of Appellant. at 15-16. We disagree.

A trial court's refusal to give a proposed jury instruction is reviewed for an abuse of discretion. *In re Det. of Pouncy*, 168 Wn.2d 382, 390, 229 P.3d 678 (2010). We review de novo alleged errors of law in jury instructions. *State v. Barnes*, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005). Jury instructions are sufficient if they allow the parties to argue their theories of the case, are not misleading, and properly inform the jury of the applicable law. *Id.* When read as a whole, jury instructions must make the applicable legal standard "'manifestly apparent to the average juror.'" *State v. LeFaber*, 128 Wn.2d 896, 900, 913 P.2d 369 (1996) (quoting *State v. Allery*, 101 Wn.2d 591, 595, 682 P.2d 312 (1984)).

Here, the trial court properly informed the jury of the applicable law and standard. The trial court instructed the jury that the State had the burden to prove each element beyond a reasonable doubt, including whether Hancock was "'likely to engage in predatory acts of sexual violence if not confined to a secure facility.'" CP at 1082 (Jury Instruction No. 6). The trial court also instructed the jury that "'likely to engage in predatory acts of sexual violence if not confined in a secure facility,'" means that Hancock "more probably than not will engage in such acts if released unconditionally from detention in this proceeding." CP at 1085 (Jury Instruction No. 9). The trial court's instructions followed the language of RCW 71.09.060(1) and RCW 71.09.020(7) nearly verbatim. Therefore, the trial court's instruction accurately states the law.

Hancock contends that the statutory phrase "more probably than not" is not "manifestly clear," and the Supreme Court "feels the need to use the phrase '50 percent' to explain the phrase 'more probably than not', rather than allowing it to speak for itself." Br. of Appellant at 15.

Hancock loosely relies on *In re Detention of Brooks*, 145 Wn.2d 275, 36 P.3d 1034 (2001), to support this claim. The *Brooks* court, however, did not address jury instructions and it did not hold that the "more probably than not" standard is unclear. *Brooks*, 145 Wn.2d at 284. Rather, *Brooks* rejected the argument that chapter 71.09 RCW violated his due process and equal protection rights. *Brooks*, 145 Wn.2d at 296-98.

*Brooks* does not require the trial court to instruct the jury that "more probably than not" means that the likelihood of Hancock engaging in predatory acts of sexual violence exceeds 50 percent. *See* WPI 365.14. And Hancock provides no authority interpreting *Brooks* to require trial courts to instruct a jury on numerical values instead of the statutory definition. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

To the extent that Hancock argues that the trial court prevented him from arguing his theory of the case, that argument fails. The trial court ruled that while it would not instruct the jury about percentages of risk, the parties were free to argue about what "more probably true than not" means. 1 VRP at 34. And Hancock presented evidence of his theory through his expert, Dr. Fisher. Dr. Fisher testified that "[l]ikely means more likely than not or greater than 50 percent." 8 VRP at 1089. Hancock fails to explain how the trial court's instruction prevented him from arguing his theory of the case. The standard is whether the instructions allow the parties to argue their theory of the case, not whether the instructions are exactly what the party wanted in order to emphasize their theory of the case. *See State v. Hartzell*, 156 Wn. App. 918, 937, 237 P.3d 928 (2010) (holding that the trial court is not required to give the exact instruction proposed).

The trial court did not err by instructing the jury on the statutory burden and standard. The court's instructions accurately reflected the law and allowed Hancock a proper basis to argue his theory of the case. We hold that the trial court did not err in declining to give Hancock's proposed "exceeds 50 percent" instruction.

2.     Crime of Sexual Violence

Hancock also argues that the trial court's instructions violated his due process rights by commenting on the evidence and relieving the State of its burden to prove that Hancock had previously been convicted of a "crime of sexual violence." Br. of Appellant at 17. Specifically, Hancock asserts that chapter 71.09 RCW requires the jury to determine whether Hancock's predicate offenses were "violent in fact," as defined by "dictionary.com." Br. of Appellant at 23. We disagree.

Article IV, section 16 of our constitution prohibits judges from commenting on the evidence before the jury. "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." WASH. CONST. art. IV, § 16. Article IV, section 16 prohibits judges from instructing the jury that a factual matter has been established as a matter of law. *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006).

The trial court instructed the jury that to establish that Hancock was an SVP, the State must prove beyond a reasonable doubt, among other elements, that he "has been convicted of a crime of sexual violence, namely, Rape of a Child in the First Degree or Indecent Liberties with a Child Under the Age of 14." CP at 1082 (Jury Instruction No. 6). The trial court did not define a "crime of sexual violence."

10

Hancock did not object to the trial court's instruction. And Hancock conceded the issue of whether he had been convicted of a sexually violent offense in opening and closing arguments. Generally, to raise a claim of instructional error for the first time on appeal, Hancock must show a manifest error affecting a constitutional right. *In re Det. of Leck*, 180 Wn. App. 492, 504, 334 P.3d 1109, *review denied*, 335 P.3d 941 (2014); RAP 2.5(a). As long as the instructions properly inform the jury of the elements, "any error in further defining terms used in the elements is not of constitutional magnitude." *State v. Gordon*, 172 Wn.2d 671, 677, 260 P.3d 884 (2011). Hancock does not offer any argument or authority regarding why we should review issues raised for the first time on appeal, and we decline to do so. *See Millies v. LandAmerica Transnation*, 185 Wn.2d 302, __ P.3d __ (2016) ("Failure to make an adequate objection may preclude appellate review of that instruction.").

B. "CURRENTLY DANGEROUS"

Hancock argues that due process requires the State to prove that he was "currently dangerous" or that he "was likely to engage in predatory acts of sexual violence over any period less than the remainder of his entire lifetime." Br. of Appellant at 28, 31. Hancock asserts that the commitment cannot be based on lifetime risk, and that "some other formulation must be used to express a person's overall risk." Br. of Appellant at 30. However, Hancock acknowledges that the State "need not prove imminent risk" or "prove that the risk arises within the foreseeable future." Br. of Appellant at 30. Hancock's argument fails.

The Supreme Court addressed a similar argument in *In re Detention of Moore*, 167 Wn.2d 113, 125, 216 P.3d 1015 (2009). The court held that it was not necessary to impose on the State an additional burden of proving Moore was likely to reoffend "in the foreseeable future." *Id.* "By

properly finding a person to be an SVP, it is implied that the person is currently dangerous." *Id.* at 125. The court also noted that RCW 71.09.070 requires annual evaluations, thus ensuring that the SVP's dangerousness assessment remains current. *Id.* at 125 n.3; *see also In re Det. of Keeney*, 141 Wn. App. 318, 326, 169 P.3d 852 (2007) ("Fact finders are not required to consider any particular time frame when making the determination [of future dangerousness]."). *Moore* controls, and Hancock's argument fails.

C.     ILLUSTRATIVE EXHIBIT 44

Hancock argues that the trial court erred by allowing the State to introduce exhibit 44. Specifically, Hancock argues that (1) exhibit 44 does not "accurately illustrate the underreporting problem because it was not proportionate to the data," and (2) "Dr. Packard did not relate the exhibit to underreporting of predatory acts of sexual violence." Br. of Appellant at 32. We disagree.

We review a trial court's decision to admit illustrative evidence for an abuse of discretion. *State v. Hunter*, 152 Wn. App. 30, 41, 216 P.3d 421 (2009), *review denied*, 168 Wn.2d 1008 (2010); *see In re Det. of West*, 171 Wn.2d 383, 396-97, 256 P.3d 302 (2011). A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds or reasons. *West*, 171 Wn.2d at 397. A trial court's decision is manifestly unreasonable if it "adopts a view 'that no reasonable person would take.'" *In re Det. of Duncan*, 167 Wn.2d 398, 402-03, 219 P.3d 666 (2009) (quoting *Mayer v. STO Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006)). "The use of demonstrative or illustrative evidence is to be favored and the trial court is given wide latitude in determining whether or not to admit illustrative evidence." *State v. Lord*, 117 Wn.2d 829, 855, 822 P.2d 177 (1991).

The trial court did not abuse its discretion in admitting exhibit 44 for illustrative purposes because exhibit 44 was related to, and used to illustrate, Dr. Packard's testimony about the limitations of the risk assessment tools and was therefore relevant. During the State's offer of proof, Dr. Packard testified that exhibit 44 was "intended to reflect the concept that there is under-reporting." VRP at 783. In other words, " there are far more sex offenses that take place than get reported." 6 VRP at 882. Furthermore, the record contains no indication that either the State or Dr. Packard represented that exhibit 44 was proportionate to the known data.

Hancock claims exhibit 44 "left jurors with the inaccurate impression that he is far more likely to reoffend than predicted by his actuarial score" because it was not proportionate. Br. of Appellant at 33. Hancock's argument goes towards the weight of the evidence, not the admissibility, which are determinations exclusively for the trier of fact.[4] *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Hancock also argues that the trial court erred by admitting exhibit 44 for illustrative purposes because "Dr. Packard did not relate the exhibit to underreporting of *predatory acts of sexual violence*." Br. of Appellant at 32 (emphasis added). At trial, Hancock only argued that the trial court should exclude exhibit 44 because it was not to scale as to generally "unreported sex offenses, arrested ones, charged ones, [and] convicted ones," not specifically as to "predatory acts of sexual violence." *Compare* 5 VRP at 673-74, *with* Br. of Appellant at 32.. Accordingly, we do not consider Hancock's new argument that the trial court erred by admitting exhibit 44 for

---

[4] The trial court instructed the jury that the illustrative exhibits were not evidence, and that it should only consider the exhibits that were admitted and sent to the jury room. The record contains no indication that the exhibit 44 was sent to the jury room during deliberations. We presume that the jury follows the court's instructions. *Lord*, 117 Wn.2d at 861.

illustrative purposes because Dr. Packard did not connect the illustration to underreporting of predatory acts of sexual violence. RAP 2.5; *State v. Powell*, 166 Wn.2d 73, 82, 206 P.3d 321 (2009) (holding that an appellate court will not reverse the trial court's decision to admit evidence where the defendant argues for reversal based on an evidentiary rule not raised at trial).

D.    MOTION FOR MISTRIAL

Hancock argues that the trial court violated his due process rights to counsel by failing to inquire into his reasons for requesting a mistrial. We disagree.

The decision whether to grant a motion for mistrial is within the sound discretion of the trial court and is reviewed for an abuse of discretion. *In re Det. of Broten*, 130 Wn. App. 326, 336, 122 P.3d 942 (2005), *review denied*, 158 Wn.2d 1010 (2006). A trial court abuses its discretion when it acts on untenable grounds or its ruling is manifestly unreasonable. *Id.* "A decision is based on untenable grounds or for untenable reasons if the trial court applies the wrong legal standard or relies on unsupported facts." *Duncan*, 167 Wn.2d at 403. A trial court's decision is manifestly unreasonable if it takes a view that no reasonable person would take. *Id.*

Before closing arguments, Hancock moved for "mistrial due to ineffective assistance of counsel." 10 VRP at 1421. The trial court denied Hancock's motion. On appeal, Hancock exclusively offers authority and argument related to a denial of a motion to substitute counsel or a motion to withdraw.[5] Hancock does not present argument or authority relating to the trial court's

---

[5] Br. of Appellant at 35 (citing *United States v. Blackledge*, 751 F.3d 188, 193 (4th Cir. 2014) (reviewing denial of counsel's motion to withdraw); *State v. Cross*, 156 Wn.2d 580, 607, 132 P.3d 80 (2006) (reviewing ineffective assistance of counsel and trial court's refusal to appoint new counsel), *cert. denied*, 549 U.S. 1022 (2006); *United States v. Adelzo-Gonzalez*, 268 F.3d 772, 776 (9th Cir. 2001) ("Adelzo-Gonzalez argues that the district court erred each time it denied his

denial of his motion for mistrial. Because Hancock fails to provide applicable argument or authority, his claim that the trial court violated his due process rights to counsel by failing to inquire into his reasons for requesting a mistrial fails. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

To the extent that Hancock is arguing that we should treat his request for a mistrial based on dissatisfaction with his counsel as though it were a request for new counsel, that argument fails because Hancock explicitly requested a mistrial. Hancock offers no authority for the idea that the trial court should have understood that explicit request differently. Therefore, the trial court did not have an opportunity to rule on Hancock's unmade motion. Accordingly, a challenge based on a request for new counsel is not properly us. And Hancock does not provide authority to support his challenge to the trial court's denial of his motion for mistrial that he made pro se while represented by counsel. We hold that Hancock's challenge fails.

Further, the trial court did not err by denying Hancock's motion for mistrial based on a claim of ineffective assistance of counsel. At trial, Hancock made a "motion for mistrial due to ineffective assistance of counsel," claiming he received ineffective assistance of counsel because defense counsel changed trial strategy.[6] 10 VRP at 1421. Hancock has the burden to demonstrate that counsel's performance was deficient and that deficient performance prejudiced his case. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). Hancock fails to show, and the record does

---

motions for appointment of substitute counsel, depriving him of his Sixth Amendment right to counsel.")).

[6] Hancock claimed that he had "been deceived by [his] counsel for over six months of what was going to happen in this court," and he and counsel "spent six months going over what my testimony was going to be and they changed it." 10 VRP at 1421.

not show, how counsel and Hancock prepared for trial or whether counsel unreasonably changed trial strategies.

Moreover, Hancock's mere claim that he disagreed with counsel's trial strategies does not meet the burden to demonstrate deficient performance. "[I]n Washington, legitimate trial tactics are within trial counsel's province and cannot be the basis for an ineffective assistance of counsel claim." *State v. Riofta*, 134 Wn. App. 669, 694, 142 P.3d 193 (2006), *aff'd*, 166 Wn.2d 358, 209 P.3d 467 (2009). Thus, Hancock's claim that the trial court erred by not inquiring further into Hancock's motion that he is entitled to a mistrial because his counsel was ineffective for changing trial strategy fails.

E.      PROSECUTORIAL MISCONDUCT

Hancock argues that the State committed misconduct during closing arguments by testifying to facts not in the record. Hancock claims that the prosecutor (1) improperly implied that Hancock perjured himself; and (2) "'testified,' contrary to the evidence." Br. of Appellant at 38. We disagree.

To prevail on a claim of prosecutorial misconduct, Hancock must show that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012)). Because Hancock failed to object, he is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *Id.* at 760-61. When there is no objection, we apply a heightened standard requiring the defendant to show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Id.* at 761 (quoting *State v. Thorgerson*, 172

Wn.2d 438, 455, 258 P.3d 43 (2011)). When reviewing a prosecutor's misconduct that was not objected to, we "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Emery*, 174 Wn.2d at 762.

In analyzing prejudice, we do not look at the comment in isolation, but in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury. *State v. Yates*, 161 Wn.2d 714, 774, 168 P.3d 359 (2007), *cert. denied*, 554 U.S. 922 (2008). Also, we presume the jury follows the trial court's instructions. *Lord*, 117 Wn.2d at 861.

"In closing argument, a prosecutor is afforded wide latitude to draw and express reasonable inferences from the evidence." *State v. Reed*, 168 Wn. App. 553, 577, 278 P.3d 203, *review denied*, 176 Wn.2d 1009 (2012). A prosecutor is entitled to "point out improbabilities or a lack of evidentiary support for the defense's theory of the case." *State v. Killingsworth*, 166 Wn. App. 283, 291-92, 269 P.3d 1064, *review denied*, 174 Wn.2d 1007 (2012).

1. Implication of Perjury

Hancock argues that the prosecutor "improperly implied that Mr. Hancock perjured himself" when the State argued that Hancock had only recently claimed he did not commit an offense between 1988 and 1999 and that he would be wearing an ankle monitor if released from prison. Br. of Appellant at 38. Hancock claims that "[n]othing in the record supported the prosecutor's" assertions and that the prosecutor's "testimony" was prejudicial. Br. of Appellant at 38-39.

During closing arguments, the prosecutor argued that trial was "the first time we ever heard" that Hancock did not have a single victim between 1988 and 1999, and that if released, Hancock would wear an ankle monitor. 10 VRP at 1446. Hancock argues that the prosecutor's

argument was improper because the record does not support the prosecutor's assertions.[7] However, Dr. Packard testified that Hancock had not spent more than "about eight months" without offending. 7 VRP at 927. Therefore, the prosecutor's comment regarding Hancock's victims was a reasonable inference from the record. Also, other than Hancock's own testimony, the record does not indicate that Hancock would be wearing an ankle monitor if released, and therefore, the prosecutor's comment regarding an ankle monitor was a reasonable inference from the lack of evidence. Thus, Hancock's claim of misconduct fails.

2. Contrary to the Evidence

Hancock argues that the prosecutor made arguments "contrary to the evidence" and factually inaccurate arguments. Br. of Appellant at 38.

The prosecutor argued that Hancock's mother and sister "don't know his offense history or the details or the triggers for re-offense. They have no clue as to what he has done or how he has gone about doing it." 10 VRP at 1455. Hancock argues that the prosecutor's arguments were contrary to the evidence because his mother and sister were familiar with his offense history.

Hancock's argument is not supported by the record. Both Hancock's mother and sister testified that while they were aware that Hancock has committed crimes against children, neither was familiar with the details of the acts or familiar with Hancock's risk factors or triggers.

---

[7] In support, Hancock cites over 800 pages of record and asserts that he "made numerous statements during his deposition and his hours of interviews," but that his statements were not introduced in their entirety. Br. of Appellant at 38. But it is not the job of the appellate court to search through the record to find evidence supporting the appellant's argument. *Mills v. Park*, 67 Wn.2d 717, 721, 409 P.2d 646 (1966) ("We are not required to search the record for applicable portions thereof in support of the plaintiffs' arguments."). Therefore, Hancock's challenge fails.

The prosecutor is entitled to draw inferences from the record, and the record supports the prosecutor's arguments. Therefore, Hancock's claim that the prosecutor's comments were improper because they were "contrary to the evidence" fails. Br. of Appellant at 38.

The prosecutor also argued that Hancock's mother and sister think "it's okay to be around kids as long as adults are present." 10 VRP at 1456. Hancock argues that the prosecutor's argument is factually inaccurate because "neither [his mother nor sister] took this position."[8] Br. of Appellant at 39.

The prosecutor's argument is supported by the record. The State asked Hancock's sister, "And you've indicated that you think it's perfectly fine that—if he were to be around children as long as others were around; is that right?" She responded, "That's what the courts have usually said for when—but I think at this point in time, he's going to just stay away from children altogether." 7 VRP at 1050-51. She also testified that "[a]s long as there are other adults in the household, I don't see him taking any children off to the hallway and molesting them. No, I don't think they'll be in danger." 7 VRP at 1051-52. Hancock fails to demonstrate that the prosecutor's arguments were factually inaccurate and improper.

---

[8] Hancock also argues that the prosecutor's argument was factually inaccurate because "they had agreed that no children or grandchildren would visit the house." [7 V]RP 1031-1055, [8 VRP] 1351." Br. of Appellant at 39. Hancock testified that he and has family had agreed that children would not be allowed on the property if he were released and living there. However, Hancock's argument is not relevant to determining whether the prosecutor's argument was improper. The prosecutor's argument did not address whether the family would allow or disallow children from the property. Rather, the prosecutor argued that the family did not fully comprehend Hancock's risk, demonstrated by their belief that he did not pose a danger to children as long as other adults were present.

No. 47336-4-II

Hancock fails to demonstrate that the prosecutor made improper closing arguments. Because Hancock has failed to demonstrate that the prosecutor's arguments were improper, his claims of prosecutorial misconduct fails.

CONCLUSION

We hold that the trial court did not err in instructing the jury, Hancock's claim that the State is required to prove that Hancock was likely to reoffend within some specific timeframe "less than the remainder of his entire lifetime" fails, the trial court did not err in admitting exhibit 44 as an illustrative exhibit, the trial court did not err when it did not inquire as to the reason Hancock requested a mistrial, and Hancock fails to show the prosecutor engaged in improper conduct. Br. of Appellant at 31. Therefore, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Worswick, J.

_____
Bjorgen, C.J.

20